Welcome all of you to a special session of the Fourth Circuit here in Spartanburg. When Judge Russell was alive, he routinely held terms of court here in the summer, so we thought we would renew the tradition. One little tidbit of history, in 1943, Henry Kissinger was in the Army and he was naturalized in this courtroom, so there have been a lot of famous things that have gone on. That's one of the more interesting facts. All right, we're ready to proceed in Al Shimari v. CACI. Mr. O'Connor. Good morning. May it please the Court, my name is John O'Connor and along with my co-counsel Bill Dolan, we represent CACI in this appeal. I think I want to start by noting the posture of this case is very different than it was the last time we were before the Court. Since the case was last remanded, plaintiffs abandoned any claim that CACI personnel directly mistreated them. And accordingly, the District Court dismissed all direct counts against CACI. All that remains in this case are claims that CACI is liable for abuses allegedly inflicted by U.S. soldiers in a battlefield detention facility. The second significant difference is that almost immediately after remand, plaintiffs abandoned and dismissed all of their common law counts. Those counts had innumerable problems, but they were out of the case immediately upon remand, and so all that remains are claims under the Alien Tort Statute, a statute that is rife with separation of powers and foreign relations concerns, a statute that the Supreme Court has said federal courts must exercise judicial caution and vigilant gatekeeping before allowing any claims to proceed under the Alien Tort Statute. This case has been going on quite a while. What are next steps? How much longer? What do you suggest are next steps? Well, Your Honor, I think next steps are we have this appeal because we've been denied immunity that we believe that CACI is going to resolve this case and end this case essentially here today. There are a number of problems with subject matter jurisdiction, immunity being just one of them. There's been intervening Supreme Court precedent, intervening precedent from this Court that we think mandates dismissal of this case. What do you do about our unbound holding in Al-Shamari 2 about how we deal with sovereign immunity and derivative sovereign immunity? How do you get around that? Well, Your Honor, in Al-Shamari 2, this Court said that CACI would be able to take an immediate appeal of a denial of immunity if it was grounded in law. We could not have a denial of immunity more grounded in law than what we have here from the District Court. Well, I've got a stack of records about that high on my desk downstairs. Are you telling me there are no factual disputes that have to be considered by the court below? In denying... As it relates to sovereign. That's exactly what I'm telling you, Your Honor, because the District Court denied sovereign immunity on one ground and one ground, or derivative sovereign immunity on one ground and one ground only. And that was the District Court's legal conclusion, bereft of any factual assessment, that the allegation of a Yuskogin violation is implied, that sovereign immunity is impliedly But let's assume that's wrong for the sake of discussion. Isn't under the, and you cited Al-Shamari 2, that there is, it looks like to me, and I'm newer to this case than you and everyone else here, but the door is shut on collateral, on the collateral order doctrine for bowl of war, for political question doctrine, and for preemption in terms of immediate appeal. It leaves an avenue potentially for a man gold or a derivative sovereign immunity appeal, as you say, if it's an abstract question of law. I don't think the abstract question of law, however, as I read all the cases, is about the Yuskogin's issue. The issue requires for a contractor an abstract question of law and adherence to the contract, and there be no question of fact about adherence to the contract. Is it your position that there's no questions of fact at all about adherence to the contract? Yes, it is, Your Honor. But I want to back up and say that in assessing whether an immediate appeal is available, this Court held in Winfield v. Bass, it was an en banc decision from 1997, that that assessment is made based on the basis of the fact that there is no question of fact about adherence to the contract. And that's the basis on which the district court denied immunity. And the court said, the Supreme Court directed that in determining our jurisdiction in this area, we should consider the order entered by the district court to assess the basis for its decision. And the only basis on which the district court denied a derivative immunity to CACI is its legal conclusion that the United States would not have sovereign immunity for allegations of violations of Juskogin's norms. Assume we think you have to show there's no question of fact at all about adherence to the contract. Explain your position as to how that is the case. Sure, Your Honor. Two points. One, the contract provides, and all of the testimony, unrebutted, provides that CACI's remit with that contract was to locate and hire civilian contractors, get them to Iraq, and turn them over to the U.S. military chain of command so the U.S. military chain of command could utilize them in their operations and supervise them operationally. How does RJR Nabisco help you, or does it help or hurt you? Oh, RJR Nabisco certainly helps us on the question of extraterritoriality. RJR Nabisco made clear that the focus test was on the question of whether the focus test applies to all statutes, including the Alien Tort Statute. In fact, at page 2101, the Court talked about Morrison and Kiobel and talked about that they require a two-step framework for extraterritoriality. And they talk about the first step, which is, does the statute apply extraterritorially? That was resolved in Kiobel. ATS does not. And then the Court went on to say, if the statute is not extraterritorial, then at the second step, we determine whether the case involves a domestic application of the statute, and we do this by looking at the statute's focus. And the paragraph preceding that, the Court talked about Kiobel and explained that the only reason that the Court in Kiobel did not explicitly apply the focus test was because everything had happened overseas. So you didn't need to know the focus of the statute because it was all overseas. Somewhere in the record, Judge Brinkman has said, used the phrase, law of the case. Does she understand that R.J.R. Nabisco controlled? Well, we certainly argued to the District Court that R.J.R. Nabisco created a new standard, and this Court's decision in Roe v. Howard, on which Judge Quattlebaum sat, directed the Court, the District Court in that case, to apply R.J.R. Nabisco to an ATS case and not the touch-and-concern approach that this Court had taken in El Shomari 3. We argued that that was intervening in case law. The District Court actually said that this is an interesting argument, that R.J.R. Nabisco creates, quote, a possibly new standard, and then said, but I'm not going to reverse the Fourth Circuit. They might want to reverse themselves, but I'm not going to do it. Mr. O'Connor, again, assume you're right on the Alien Tort Statute, and assume the District Court's wrong there. Is there a basis for the Alien Tort Statute issue to the subject matter jurisdiction statute, a basis under that statute, for an immediate appeal? We don't think standing alone. You have to get up through another way and make that appendant. That's right. And we're here on that way, which is the denial of immunity on a pure question of law that's not tentative, that occurred after all the discovery that the District Court was prepared to allow had been taken. Now, there's lots of important discovery the District Court did not allow because of Secretary Mattis' assertion of the state secret's privilege, but we have a complete record in terms of what the District Court is willing to allow in this case. So is it your position that the evidence in the record of the conduct, I won't outline it all, that the plaintiffs complained of, is it your position that CACI was, there's no evidence it was involved in this torture or improper conduct, or is it your position that CACI was involved with it, but it was doing so because the party with whom it contracted authorized it? Well, Your Honor, our position is that the record does not show CACI personnel engaged in torture in any way, shape, or form. Assume we think there's a question of fact about that, because there's, I'm not going to argue with you, but I think there's evidence in the record that would suggest at least in terms of, you know, setting up the procedures, talking about the procedures. There may not be anything with respect to the direct involvement of these plaintiffs, but to the overall conduct, I think there is evidence in the record of that. And, Your Honor, that was going to be the second half of my point, that the record does include some in any way qualifies torture relating to plaintiffs or detainees other than these plaintiffs. And there is no record evidence of CACI personnel engaging in any misconduct with respect to these plaintiffs or directing anybody to engage in misconduct with respect to these plaintiffs. Plaintiffs were all deposed. They have no evidence to provide regarding CACI personnel being involved in mistreating them. We took the depositions. They were pseudonymous, so they're by telephone, and all of the witnesses were Interrogator A, Interrogator B, et cetera. But we took 11 depositions of pseudonymous personnel who participated in interrogations of plaintiffs, and every one of them said that CACI personnel had no role in any evidence of, you know, through the reports and through the testimony of some military personnel about CACI assuming some level of supervision in the actions. And you may question whether that rises to the level of torture or debate that. But in light of that record, what I'm trying to figure out is your argument that there is CACI was involved, it was doing so under the approval, if you will, of the party with whom it contracted. With respect to these plaintiffs, Your Honor, there is not just, there is no evidence of CACI personnel being involved in any way in the mistreatment of these plaintiffs. With respect to whether CACI personnel, with respect to other detainees, acted as directed by the U.S. military, I think the record is quite clear that the U.S. military took it upon itself to dictate all of the operational supervision of both military and CACI interrogators. And to the extent that there is any evidentiary gap, such as we don't have El Shomari's, the interrogation plan for El Shomari's one interrogation, which exists and could be given to us, or that we don't have the detailed discussion of the interrogation approaches used for the interrogations of El Shomari or El Zubayeh, which again, exists and could be given to us, you know, El Masri instructs what happens then. If we're unable to come to ground on exactly what the United States approved, that goes directly to a defense of a required dismissal. That may be an issue for trial or about whether there's an adequate basis for the plaintiffs to prove their case. And you have a due process issue on that, too. I understand that. But why isn't, in light of their allegations that this was, that they are, that CACI was involved in a conspiracy and was aiding and abetting, why is not the evidence that they were part of the planning sufficient, even if there's not specific evidence they were involved in the actual interrogation techniques as it relates to these plans? Your Honor, as we stated in our brief, the record is undisputed that interrogators, military interrogators, CACI should be treated. And that's how the military set it up. The evidence also is clear in the record, unrebutted, by the MPs whose depositions were taken, that this was not interrogators coming down to the hard site and saying, generally, I want you to do this with detainees, I want you to do that. It was instructions were given specific to an interrogator's assigned detainees, and it would be along the lines of, we have an approved sleep management program for detainee X. Obviously, the interrogator's not going to stay there for 24 hours, and they give instructions, like, he's supposed to be kept awake for eight hours, allowed to sleep for one, or whatever the specifics of the program were. That was a natural process, but it was also very specific by all the testimony from interrogators. I don't understand how that undermines the conspiracy and aiding and abetting theory that Judge Quattlebaum was asking about. Your Honor, because no witness and no documents implicate CACI personnel in giving any instructions relating to the treatment of these plaintiffs. This wasn't a broad conspiracy. This was interrogators giving instructions. So what did CACI do, if anything, with respect to these plaintiffs? What was their role? Let's start with El Shomari. What we know is that CACI Interrogator A, who's pseudonymous, conducted one interrogation of El Shomari. CACI Interrogator A was deposed pseudonymously, testified that there was no mistreatment of El Shomari. We also took the deposition of Army Interrogator B, who was the other interrogator for that one interrogation. He testified that there was no mistreatment. But if El Shomari alleges that there was mistreatment, isn't that a question of fact? Well, none of the plaintiffs, when deposed, could tie any of their mistreatment to CACI personnel. There's lots of people in the hard side. And we asked specifically, what's CACI's involvement? Could you name a CACI employee that you interacted with? Could you identify a CACI employee? They didn't have any facts to provide that tie CACI personnel to their mistreatment. Mostly, their testimony is that they were mistreated by MPs and don't really have any basis for tying any interrogation personnel to it. There are some allegations that they were mistreated during interrogations. But, for instance, El Zubay was interrogated three times, only one of which involved a CACI employee. The first two interrogations were solely Army personnel. But one did involve a CACI employee, as I understand what you just said. But one did. And interestingly, El Zubay actually testified that he was never mistreated during an interrogation. That all of his mistreatment occurred outside of interrogations and then said there was one time when he, basically, he was done being interrogated. And this is some days or weeks after his third interrogation. Some interrogators brought him to a room. Somebody punched him in the chest and then said, you know, get out of here. And that was it. No indication that CACI personnel are involved in that. But even more to the point, that's a far cry from a claim that would be recognizable under the Alien Tort Statute, which are the only statutes that are in play here anymore. Your Honor, I see my time is running short. The one thing I wanted to say is, we think that the court's ruling, the district court's ruling on sovereign immunity is clearly wrong. Sovereign immunity waivers cannot be implied. We think the court should make, you know, reverse that ruling in no uncertain terms. And then from there, I think the court has options. Because there's a lot of jurisdictional problems in this case. To us, the cleanest, narrowest resolution of this case is on extraterritoriality. Plaintiffs have not alleged any domestic violations of international norms in their brief. And so it's really just a question of does the focus testify, and it does. Thank you, Your Honor. Good morning. May it please the Court. I'd like to start where Judge Thacker started, which is to observe that it's been over 11 years since plaintiffs filed this complaint. Eight years since CACI filed its first improvident appeal before this Court. And plaintiffs survived CACI's motion for summary judgment, which raised all of the questions about the sufficiency of the evidence that you are all surfacing on a 2,000-page record. Right. And now, appellant is argued pretty much a question of whether it's been a sufficient summary judgment that the Court has given the plaintiffs. And if so, this is an interesting conversation, but one we should be having with the jury. Because the District Court, CACI made these arguments in a summary judgment motion. And plaintiffs filed 700 pages of evidence, disputing it, on top of voluminous evidence that CACI lost that motion. It is not for this Court to review summary judgment on an interlocutory appeal. I assure you there is plenty of record evidence that comes, even Al-Shammari 4 itself, identified on the one hand, CACI says this, on the other hand, it cites very approvingly the Dekuba report and says unequivocally he found there was an absence of evidence that we had before the Court of Appeals in Al-Shammari 4 that they ordered MPs to abuse detainees. We have evidence connecting CACI interrogators to each of our plaintiffs. We have evidence from military police who were told by CACI employees to soften up detainees and evidence that everyone understood what that meant. We have voluminous evidence, but we can, you know, it's not for this Court to evaluate a 4,500-page record, because that's what the district court did and what district courts are supposed to do. And I appreciate that evidence, but it seems to me the record, as you suggest exists, is somewhat, you know, for pertinent issues, maybe without questions of fact, in that there is evidence that on a broad scale CACI was able to do that. And I'm not saying that CACI is involved with the military in this conduct that is complained about. There may not be evidence about such conduct as it relates to these particular plaintiffs, but there is in the overall context from a conspiracy and aiding and abetting standpoint. So if that's the case, and it's happening pursuant to a contract where the military is delegating some of its authority in this area to a contractor, why isn't it an abstract question of law as to whether, you know, when the military is there shoulder-to-shoulder with CACI doing this and not objecting, that it's in conformity with the contract that is why CACI is there in the first place? Okay. So the question of derivative sovereign immunity, Campbell, you will tell us, is not coterminous with sovereign immunity. As Your Honor pointed out, they're not entitled to it if there is a violation of the government's instructions or the federal law. And this is very important. CACI assumes that simply because they were, quote, under the thematic umbrella, that's Burnpit's language, they're entitled to derivative sovereign immunity. But Burnpit says that is not enough. Campbell, you all requires, it incorporates ye of derivative sovereign immunity. An entity has to follow all government directions. If CACI were right about merely sending over interrogators, entitling them to derivative sovereign immunity, Campbell, you all would have come out differently because, of course, the contractor there was generally following the government's instructions, but they specifically violated the terms of the contract. And so just to get to the, tie this to the jurisdictional question under prong two of Cohen, the, the, the, the, the, the, the, the, the, the, the district court did not decide whether CACI violated the government's instructions. And here the government's instructions are to comply with international law at the Geneva Conventions and federal law because she couldn't, because not only are they not completely separable from the merits under prong two of Cohen, they are absolutely overlapping. And because she decided summary judgment on a, on a 2,000 page record, she determined that these questions were intertwined and would go to a jury. And there's a way in which that's why sovereign, derivative sovereign immunity is not, is really more a defense than, than an, an immunity. And that's how CACI treated it, by the way. They did not follow. But our, our Cunningham case comes after the fact and pretty much makes it clear that it's not a defense. It's a immunity from suits. And I think that eliminates the question of footnote three from Alshamari two and brings me back to this question of whether or not, you know, you can really say it's outside the contract or, or that they're violating the government's directives when they're working alongside the government in doing the things you're complaining about. Your Honor, let me address that, the question of terminology and direct your attention to the South Carolina Board of Dentistry, which quotes Judge Posner. Simply calling something an immunity or a defense is not dispositive of whether or not it fits Cohen prong three, whether or not it's appealable immediately, because these questions are always interchangeable. And there is no case in the Fourth Circuit that holds the question of whether or not it's directly appealable. Alshamari two footnote three says man-gold immunity is, which CACI, despite what it says in its brief, has not invoked, but derivative sovereignty isn't. And they cite the apparent consensus of cases from the 7th, 5th, 9th, and 11th circuits. I'm familiar with those, but then if you look at Alshamari's, not the footnote, but the direct language that says if you have a question of law, derivative sovereign immunity would be appealable, I know the footnote creates some question, but then, anyway, I don't want to get into that. Can I address that, Your Honor? Because that part of the abstract question of law or sufficiency of the evidence is talking about man-gold immunity. And footnote three has already established that man-gold official immunity is within the class of orders, and it says derivative sovereign immunity isn't. Remember, CACI relied on man-gold immunity back then. So that was an abstract question of law, and the court was analogizing to qualified immunity. The court says sometimes qualified immunity is immediately appealable if it turns on the abstract question of clearly established law. So sometimes man-gold immunity would be immediately appealable. But like qualified immunity where it turns on fact, sufficiency of the evidence, it is never immediately appealable. So we have, so the court has not endorsed derivative sovereign immunity as an immediately appealable issue. If we could, the question, that may be right, I may have a different view, but it leads to a point that I think is important, which is if the activity complained of by CACI is being carried out shoulder to shoulder with the military with whom they contracted, how is that in the context of law? First, your Honor, Al-Shamari 4 says if unlawful conduct is not necessarily protected. Second, the record, again, I'm not sure I have enough time to go through the record. The record is deeply contested on the shoulder-to-shoulder question. We have Toguba saying there's a command vacuum and that CACI interrogators took positions of authority and there was an absence. This is what Al-Shamari 4 cites, a unequivocal evidence of an absence of leadership and supervision, particularly at night. In the hard cite, we have evidence that Frederick, who was in the lead of Tier 1A where all the plaintiffs were, was instructed by Big Steve to soften up detainees and everyone understood what that meant. And our plaintiffs suffered exactly the same kinds of abuses that they ordered, Big Steve ordered CACI to soften up detainees. Your Honor, if I could just answer that in a couple of ways. First, we by no means concede that any of the jurisdictional questions are immediately appealable, both because we believe derivative sovereign immunity is not a hook. And second, if you look at Al-Shamari 2, Part 3 of the opinion says it rejects the theory of jurisdiction that CACI cites from Niemeyer's dissent and says even if there is a subject matter jurisdiction, in that case political question, it has to be pendent. And what does pendent mean? It has to be inextricably profound. And there is no way the abstract question of whether the focus of the ATS is... Judge Floyd asked you to assume that. We understand you're not conceding it. And we want the evidence of domestic conduct. And besides that, if we send the case back for trial, you're still going to have to answer this question. What is your evidence? Your Honor, okay, so first the focus test of RJR Nabisco, which we don't concede applies. We still think touch and concern as the court in Roe v. Howard recently affirmed and WARFAH still applies. But in any event, the focus of the ATS is, Jesner tells us, the object of that statute solicitude is to avoid the international discord that would result if serious harms that are attributable to the United States went unremediated. That's what Jesner and Sosa say. So Al-Shamari is correct to say that all of the U.S.-based connections here would, if left unremediated, would create international discord. In addition, we do have, and so that's the... status of CACI as a corporation, its conspiracy with U.S. soldiers on a U.S. military base where no foreign law applied, and additional evidence of a cover-up and failure to respond. That constellation of facts satisfies either touch and concern or focus. So give me JA sites about the conduct that happened in the United States, not just theories, evidence with JA sites. I have them. I developed them last night, but I see I don't have them at the podium. But they generally refer to reports back to the U.S. military base where the U.S. military had alleged misconduct and that, therefore, that perpetuated the conspiracy. And there's evidence in the record. I could look at the summary judgment sites, which I have handy, but not the JA sites. I apologize. Are there JA sites in your brief that would answer that question? Your Honor, there were so many issues raised in this case, we focused our JA sites in the brief on derivative sovereign immunity, which was the one that didn't address a lot of the merits because that was resolved at summary judgment. Well, while you're talking, can your associate counsel help define those notes? Because in this case, Fries is involved. Well, they can, Your Honor, but respectfully, I really, I would caution the Court, A, to take jurisdiction over a subject matter question where there is no basis. That means every time you take QI, you'll not... You're not suggesting that's the basis. We're assuming we get it another way, and we have to come to that conclusion. But if we get it another way, and it's pendent, this is something we can take a look at. Okay. And if I could just address why I believe pendent is defined in this circuit as something where something is inextricably intertwined, where the issues are tacky, can't, I don't think, make an argument that the question of the focus of the ATS is inextricably intertwined with derivative sovereign immunity. Well, you're not answering the second part of my question. Forget pendent jurisdiction. Let's say we don't have it. I mean, for some reason, we send this case back. I see. Judge Brinkle is going to ask you, or the jury is going to want to know, what is your evidence that there's a conspiracy to commit torture in this case? In the United States, by this appellate? Well, this is what Judge Brinkle has said in her oral ruling. You've got, and this was just a summary ruling. She was aware of the deeper testimony. This is the transcript at 15 to 17. And this is, again, supported by evidence that hopefully we can provide you. You've got the testimony of khaki former employee Nelson expressed serious concerns about Dugan and Johnson. You've got evidence. Those are khaki interrogators. So he expressed up the chain of command concerns about Dugan and Johnson. You've got evidence in this case that Mr. Probosnick, he was the site lead for khaki at Anabergrave, who was the person, the khaki lead person on board for several months during this critical time period, not bringing any of these concerns to the attention of anyone at khaki or falling off the problems. And you've got evidence in the record that khaki promoted Stephana Fitz, that they fought the firing of Johnson. They made no effort to contact Nelson. That's management here. And also most of the U.S. contacts are not in the joint appendix. But we have evidence that there was hiring promotion, even though they knew they were not qualified from the United States. There were daily reports back to the United States. Wait, wait. They're not in the joint appendix, but are they in the record somewhere? Yes, Your Honor. In the summary judgment record. And then there are U.S. contracts that, I mean, the focus is, would the harms be attributable to the United States? And there is ample evidence demonstrating that there are such substantial connections. And this is what Roe v. Howard affirms in Note 6. It focuses on the connection to the claims. And so that foreign entities would perceive if we didn't remediate this harm, the United States would be doing something wrong. And I think there's certainly, including the evidence I mentioned, and the evidence in Alstom R.A. 3, meets that focus of the ATS. So I want to also address the sovereign immunity issue. I think it's a very important issue. And I think it's a very important issue. And I want to raise the question not on the merits, because we don't think the court needs to decide the U.S. government, the question of U.S. government's sovereign immunity. Both because our position is there's no jurisdiction, and we believe we win on the separate question of derivative sovereign immunity as a factual matter that requires a remand for trial, since we survived summary judgment. But I also want to raise the question of waiver. It's for the first time in this court that CACI argues that the United States is entitled to sovereign immunity. They never argued that below. In fact, they argued the opposite in opposing the government's motion for summary judgment. They urged the court to recognize that the United States government does not have status-based immunity. Let me interrupt you, because I've read that in your brief, and I understand the change of position argument. But putting that aside for the sake of discussion, I mean, there's legions of cases that say waiver of the federal government's sovereign immunity must be explicit. You agree with that principle, don't you? Not in the context of the ATS, which is a distinct statute. So it's your position that sovereign immunity of the United States does not have to be explicitly waived? Yes, Your Honor. Mindful of the cabinet, our position on appeal is that you don't have to resolve it. I understand that. So I think the district court was right, although, again, we don't have to decide it. The ATS is not a statute itself that waives sovereign immunity. It refers and it doesn't create independent duties like other statutes. Is there a case that says the ATS waives sovereign immunity? No, the ATS doesn't. But I would say this is a logical extension of Samantar, because Samantar says if you're dealing with a common law immunity, in that statute, but for an official immunity, you look to the common law, and there's no common law immunity for the sovereign for use Kogan's violations. And I think the district court just extended that. But we don't think the court needs to reach it because of the fact-bound questions about whether or not Kaki violated explicit government instructions, which the court concluded there were sufficient tribal issues of fact to send to the jury. The implications of the district court's order are pretty staggering, aren't they? Because they're not limited to contractors. They're saying conduct of the military at war, if someone perceives them to violate international norms, allow suits to be brought in federal courts of the United States. If it's not for any suit brought by statute, but if there were a common law cause of action, as in Samantar here, potentially, but the government can speak to this. I think this is an issue not before the court and doesn't need to be resolved. It's possible this can be resolved after final judgment. But... Your red light's on, but just to be clear, what is it you're asking us to do? We're asking you to dismiss this case for lack of appellate jurisdiction on each of the five interlocutory orders under prong three of Kogan and prong one and two, because they're intertwined with the facts. Because preemption is not inextricably intertwined with derivative sovereign immunity, the questions are not identical as they have to be. And because all of the subject matter jurisdiction questions, likewise, are not pendant to derivative sovereign immunity, they're not inextricably intertwined, so should be dismissed. And if the court were to somehow reach the merits, recognize that they're intertwined with factual issues, and so a remand for trial would be appropriate in that circumstance. All right. Thank you, sir. We'll hear from Mr. Byron, the amicus first, and give you the last word, Mr. O'Connor. Thank you, Your Honor. May it please the Court, Thomas Byron from the Department of Justice. I represent the United States as amicus in this case. We'd like to just emphasize, as Judge Caldebaum was noting, the staggering implications of the District Court's fundamental misunderstanding of the nature of sovereign immunity and its disregard of the ample case law in both the Supreme Court and this Court. Making clear that any waiver of the Federal Government's sovereign immunity must be expressed and embodied in a statute enacted by Congress. There's no basis for the Court's conclusion that a waiver of sovereign immunity can be implied or can be found merely by the existence of the United States as a member of the community of nations or its entrance into non-self-executing treaties or any of the other observations the District Court has made. The District Court went out of its way to reach that question, a question it need not have addressed, a question that it simply got wrong. The District Court went out of its way to address that question, a question it need not have addressed, a question that it simply got wrong. What's the basis, because assume we agree with you that it got wrong, what's the basis of our addressing, of us having appellate jurisdiction to address that question? Your Honor, we've not taken a position on the plaintiff's arguments about this Court's appellate jurisdiction, so I don't want to address those questions. You just said we should fix it, so how do we fix it in your view? The position that we've taken, Your Honor, is that whatever this Court does in this case, if it addresses in any way the District Court's decisions, and we think that the government's sovereign immunity has been raised on this appeal because of the defendant's arguments about their claims to derivative sovereign immunity. So whatever this Court says about the appeal, unless the Court dismisses it for lack of appellate jurisdiction altogether, whatever this Court says, we think it would be appropriate to correct the District Court's misunderstanding on that basis, because it is such a fundamental error, and it was unnecessary in the first instance. The Court didn't need to go where it went, especially in light of the ultimate disposition of the claims against the United States, which were properly recognized, not properly before the Court at all. We just think that if the Court addresses in any way the defendant's arguments, it should also address the fundamental misunderstanding of the District Court's statements about sovereign immunity in international law. So you don't have an opinion one way or the other? The government doesn't have an opinion one way or the other as to whether we have jurisdiction over this appeal? Your Honor, we have not taken a position on those questions. Our position as amicus in this case is limited, and it's limited just to the question of federal sovereign immunity that we've addressed, and that's as far as I'm authorized to go. Thank you. I understand. If the government was a party, hypothetically the government's a defendant and the same ruling applies, would you contend the government has the ability to immediately appeal under the collateral order doctrine? We have not taken that position in other cases, Your Honor. Have you taken a contrary position? I don't think we have taken a contrary position directly. I will say, however, that we have not typically sought to appeal. What does that mean, you have not taken a contrary position directly? So I don't think, Your Honor, that we have ever said one way or the other in any of the cases that I've been involved with or that I'm familiar with that the United States either can or cannot appeal the denial of sovereign immunity on an interlocutory basis. But I will say that the practice of the United States is pretty clear, that we have not sought to appeal similar orders on an interlocutory basis. And that's, I think, as far as it goes. And why would that be? Judge Wood, I'm not authorized to explain sort of that doctrinal question. That's not a position that we've taken in our amicus brief, and I'm reluctant to go further than merely the observation about the practice. Well, would you agree that it may be, as a result, that there are factual issues with regard to the immunity question? Judge Wood, I don't think that explains it necessarily. I think this is potentially a difficult question, and it's one that, again, we didn't address in our brief and I'm not authorized to take a specific position on in the context of this case. So I apologize that I can't answer the question more directly. If the Court has no other questions about the sovereign immunity decision by the District Court, we'd urge that you correct that misunderstanding as we explained in our brief. Thank you. Thank you very much. Thank you. Mr. O'Connor. Yes, and we're both. Okay. May it please the Court. Judge Quattlebaum asked plaintiffs a very direct question. Where is the evidence of domestic conduct violating international law? Now, I sympathize with plaintiffs' counsel trying to pull that together right here, but we're not here on an empty slate. We all file briefs in this case, and plaintiffs had every opportunity to try to challenge what we said in our brief, and there is no evidence of domestic violations of international law. And, you know, at page 36 of our opening brief, we provide myriad JA sites that stand for exactly that principle. Mr. Osme talked about what they think might be not in the joint appendix but could be somewhere else in the record. He mentioned Mr. Provosnick. Mr. Provosnick was in Iraq. He's not domestic. He's in Iraq. Mr. Osme mentioned daily reports. Those daily reports, every single one of them says nothing about detainees or detainee treatment. Wouldn't this be an argument for the jury? No, Your Honor, because the question of extraterritoriality when there is no evidence of domestic conduct. I mean, the Supreme Court decided Kyobo. The Supreme Court decided RJR Nabisco. Those are not necessarily jury questions when the record is clear that whatever the focus of the statute of an issue is, there is no evidence in the record. It's a subject matter jurisdiction issue that may be right, but it doesn't have an independent basis for appellate jurisdiction. So if we agree with you hook, line, and sinker, we still have to have appellate jurisdiction. Do you agree with that? We're not aware of any court finding an independent basis for appealing an extraterritoriality decision. However, one thing I wanted to add. So you agree with that? I'm not aware of any case that's held that there's an independent basis for appealing an extraterritoriality decision. Mr. Byron for the United States talked about if the claim had been brought directly against the United States. The couple of courts that have held that there's no immediate appeal for the United States have said that that's because the United States sovereign immunity is a defense to liability. That argument is not available in this circuit with respect to derivative immunity because this court squarely held in Cunningham that it's an immunity from suit. I see my time has expired. Thank you. Thank you. I ask the clerk to adjourn court. Sonny Dye will come down and lead counsel. The court is adjourned.
judges: Henry F. Floyd, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.